UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>W. SCOTT FUHRMAN )<br>)<br>    Defendant. ) | CASE NO. 1:04-CR-59 |

OPINION AND ORDER

This matter is before the court for resolution of sentencing issues raised by the Defendant, W. Scott Fuhrman in open court during his first sentencing hearing on March 21, 2005. Fuhrman seeks a departure from the sentence prescribed by the United States Sentencing Guidelines (U.S.S.G) based upon the factors listed in 18 U.S.C. §3553(a) as applied to the individual circumstances of this case. In light of the issues raised and the novelty of *United States v. Booker* at the time of the original sentencing hearing, the undersigned deferred sentencing for six months to await rulings and clarification from the appellate courts regarding the proper application of *Booker* to facts such as those presented by Fuhrman. On September 12, 2005, the Government filed a sentencing memorandum in anticipation of a sentencing set for September 19, 2005. Defendant then moved to continue the sentencing hearing and the matter was reset for March 20, 2006. On March 3, 2006, the undersigned conducted a telephone conference wherein the defendant was instructed to file a brief on the sentencing issues before the court. Defendant did so on March 20, 2006 to which the Government responded on March 22, 2006. For the following reasons, the request for a downward departure will be DENIED.

1

Beginning with the facts of this case, Fuhrman plead guilty to an Information pursuant to a written plea agreement for possession of child pornography along with forfeiture, which carried a statutory maximum sentence of ten years.  18 U.S.C. §2252(b)(2).  This guilty plea followed the defendant's arrest after an undercover investigation uncovered that Fuhrman was part of an online group that transmitted child pornography across the internet.  Fuhrman was involved in a Yahoo! Group that had restricted membership and required an invitation by the owner of the group to infiltrate the group. The email group changed its name periodically to avoid detection of the unlawful contents transmitted there.  An FBI undercover agent received an invitation to the group and learned that Fuhrman had transmitted images of child pornography through the use of his computer in violation of 18 U.S.C. §2252.  Thereafter, a search warrant was obtained for Fuhrman's computer and his residence.  The FBI seized Fuhrman's computer which contained 750 thumbnail images of child pornography, 94 full size pictures and 3 movies containing child pornography.  Also seized were 17 CD discs containing 18,600 files, 75% of which contained child pornography.  These images were compared to known identifiable child porn victims and were found to contain over 600 images of real children engaged in sexually explicit conduct, some of whom were prepubescent.

Fuhrman was present when the search warrant was executed and gave voluntary written and verbal statements to the agents.  Fuhrman admitted membership in approximately 10 Yahoo! Groups that discussed or traded child pornography.  Fuhrman stated that "he knew that child pornography was illegal and that there were risks involved."  (PSR ¶13).

At the first sentencing hearing, Fuhrman presented witness testimony from three family members all of whom agreed that Fuhrman was generally of good character, had never violated the law before, had made an unfortunate and substantial choice in becoming involved with these online

2

groups, and he was a good father, husband, and son. In his present filings, Fuhrman submits a personal letter to the court wherein he expresses tremendous remorse for his actions and accepts responsibility for his criminal activity. In addition, he has submitted numerous letters from friends and family members reiterating that Fuhrman is a productive member of society, a good person, father, worker, taxpayer, etc. They likewise believe that Fuhrman's conduct represents aberrant behavior and that this conduct was, in large part, a lapse of personal judgment by Fuhrman occasioned by unfortunate events occurring during his upbringing.

Under *United States v. Booker,* 543 U.S. at 259-60 (2005), the sentencing guidelines are no longer a mandatory regime. Instead, the district court must take the advisory guidelines into account together with other sentencing factors enumerated in 18 U.S.C. § 3553(a). In fashioning an appropriate sentence, "[t]he Supreme Court's decision in *Booker* requires the sentencing judge first to compute the guidelines sentence just as he would have done before *Booker,* and then--because *Booker* demoted the guidelines from mandatory to advisory status--to decide whether the guidelines sentence is the correct sentence to give the particular defendant." *United States v. Dean*, 414 F.3d 725, 727 (7th Cir. 2005). In this case, the probation officer calculated Fuhrman's guidelines sentence to be 46 to 57 months.

We turn next to whether a sentence within the guidelines range is the correct sentence to give Fuhrman. *Id.* On this issue, "any sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir.2005); *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir.2005); The Seventh Circuit has further advised that while the rebuttable presumption is a deferential standard, *Id.* (citing cases)*,* "it will be a rare Guidelines sentence that is unreasonable*." Id.*

3

Having been instructed, then, that a sentence within the guidelines range is presumptively appropriate, Fuhrman may still rebut this presumption" by demonstrating that his ... sentence is unreasonable when measured against the factors set forth in § 3553(a)." *Id.* (citing *Booker,* 125 S.Ct. at 766 (noting that the factors in § 3553(a) "will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."); *United States v. Webb,* 403 F.3d 373, 383 (6th Cir.2005) ("[W]e may conclude that a sentence is unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.") (footnote omitted).  This is precisely what Fuhrman has attempted to accomplish through his argument that, after consideration of the factors set forth in 18 U.S.C. § 3553(a), a non-Guidelines sentence is appropriate in this case.  In particular, Fuhrman seeks a downward departure to a sentence that would not include incarceration.

Section 3553(a) of Title 18 of the United States Code instructs sentencing judges to "impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing." This section further instructs that courts, in determining the particular sentence to be imposed, should consider the several factors listed in § 3553(a) including the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, *id.* §3553(a)(2)(A)-(D); the sentencing range suggested by the Guidelines, *id.* § 3553(a)(4), and the need for sentencing uniformity for defendants

4

with similar criminal histories and found guilty of similar conduct, *id.* § 3553(a)(6).

This court has given serious consideration to these factors and, in particular, to the history and characteristics of this defendant and the seriousness of the offense.[1] Certainly, all of the evidence on Fuhrman's behalf indicates that he has accepted responsibility and shown great remorse for his criminal activity and that, aside from his involvement in online child pornography, he is an upstanding citizen. The court has read all of the letters submitted on Fuhrman's behalf and is deeply sympathetic to the effect Fuhrman's conduct had, and will have, on their lives. Moreover, Fuhrman has described an upbringing, namely that he was molested as a young boy, that is both tragic and disheartening but, unfortunately all too common in today's society. Although the court has considered Fuhrman's family and personal circumstances, those factors are outweighed by the seriousness of the offense and the intent of Congress to strongly punish such conduct.

As is noted by the Government in its brief, child pornography is not a victimless crime. Indeed, "no child is capable, emotionally or legally, of consenting to being photographed for sexual purposes. Thus, every image of a sexually displayed child –be it a photograph, a tape or a DVD – records both the rape of the child and an act against humanity." (Gov't's Exhibit A, "Let's Fight this Terrible Crime Against Our Children," by Andrew Vachss, February 19, 2006, PARADE Magazine). Moreover, statistics clearly demonstrate that internet "child pornography is the fastest growing of all internet business, estimated to bring in several billion dollars a year." (*Id.).* Although

---

[1] The court notes that it is not required to discuss the application of the statutory factors to the defendant in a checklist fashion but may make a simple statement on the record or in writing of "the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant. *Dean,* 414 F.3d at 729 (citing cases). Indeed, "judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." *United States v. George,* 403 F.3d 470, 472-73 (7th Cir.2005).

Fuhrman and those writing on his behalf intimate that he was merely viewing the images and thus, he should not be punished so severely for viewing what others have created, this is a serious mis-characterization of the nature of this crime.

By his conduct, Fuhrman created and sustained the market for internet child pornography. Congress has seen fit since passage of the PROTECT ACT in 2003 to increase the guideline calculations for this type of conduct because it is impossible to distinguish between the societal harm occasioned by those creating the child pornography and those viewing it.  It is a "what came first? – the chicken or the egg" proposition.   Does the creation of child pornography create the market for it.  Or, is it because there is a market, that distributors create the product.  The point is simple, under either scenario, children, the most vulnerable and innocent members of our society are victimized. And, even a "'passive' consumer who merely receives or possesses the images directly contributes to this continuing victimization."  *United States v. Sherman,* 268 F.2d 539, 545 (7th Cir. 2001). Indeed, "one of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted."  *Id.*

In this case, Fuhrman possessed thousands of images of child pornography and acknowledged that he transmitted them among the members of his internet chat group.  This is not a case where Fuhrman inadvertently discovered a website and by happenstance was caught possessing child pornography. Fuhrman intentionally downloaded thousands of images and movies and, in his own words, was aware that what he was doing was illegal.  (PSR, ¶13).  Congress, through the PROTECT Act, has chosen to seriously punish such an offense.  And thus, the court concludes that the guideline range in this case is adequate to comport with Congressional intent.

Moreover, Fuhrman indicates that he is undergoing counseling while under pretrial supervision and that he would like to continue to do so.  Section 3553(a)(4) instructs the court to consider the need for the sentence imposed to provide the correctional treatment.  Fuhrman admits that he is making steady progress through his counseling and thus, he will have the opportunity to continue down that road by availing himself of the treatment opportunities available to him while incarcerated.

Finally, it is critical to note that the Government has already shown great leniency to Fuhrman, although he may not fully appreciate that leniency presently.  The facts of this case support a charge of distribution rather than mere possession of child pornography.  Under the former charge, Fuhrman would have faced a mandatory minimum 5 year sentence from which the undersigned would not have been able to depart.  Rather than charge Fuhrman with distribution, the Government offered a plea to possession of child pornography and agreed to give Fuhrman a low-end recommendation as well as a reduction for acceptance of responsibility.

All of these factors leads the court to the conclusion that a guidelines sentence is appropriate in this case.  The Government has agreed as part of the plea negotiations to recommend a low-end guideline sentence for Fuhrman.  The court believes that such a sentence is appropriate in this case and will thus, sentence Fuhrman to the low-end of the applicable guideline range.

## **CONCLUSION**

Based on the foregoing, Defendant's request for a departure from the guidelines sentence is DENIED.

SO ORDERED.

This 13th day of April 2006.

                                                William C. Lee
                                          United States District Court
                                          Northern District of Indiana